IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 27, 2007

## BRADFORD THURMAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for McMinn County**
**No. 05-232     Carroll L. Ross, Judge**

---

**No. E2007-00702-CCA-R3-PC - Filed June 2, 2008**

---

In 2004 the petitioner, Bradford Thurman, was convicted of robbery, a Class C felony, and sentenced to five years in the Department of Correction. No direct appeal was taken from this conviction. In 2005 he filed a petition for post-conviction relief, alleging that his guilty pleas were not voluntarily and intelligently made and that his trial counsel rendered ineffective assistance. After a hearing, the post-conviction court dismissed the petition. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Charles W. Pope, Jr., Athens, Tennessee, for the appellant, Bradford Thurman.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Andrew Freiberg, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

        In March 2004 the petitioner pled guilty to robbery after admitting to police that he took a woman's purse from her arm in the parking lot of a bowling alley on November 13, 2003. At the guilty plea hearing, the petitioner testified that he was not currently under the influence of drugs or alcohol and had never been treated for a mental disease or defect. Trial counsel stated that he had no question about the petitioner's competence to enter a plea. The petitioner testified that he understood that he had a right to plead not guilty and have a jury trial, at which the State would have to prove his guilt beyond a reasonable doubt. He said that he understood his privilege against self-incrimination and his right to confrontation of witnesses and that he was waiving this privilege and

right by pleading guilty. He testified that he understood he was forfeiting his right to appeal the court's finding of guilt, although he could still appeal his sentence. The trial court later conducted a sentencing hearing and sentenced the petitioner to five years in the Department of Correction. It appears that no direct appeal was taken from this determination.

On May 12, 2005, the petitioner filed a petition for post-conviction relief, alleging that he was denied the effective assistance of counsel and that his guilty plea was not voluntarily and intelligently made. He attached to the petition a memorandum of law which did not address either of the foregoing allegations, but rather argued that his sentence was excessive.

At the post-conviction evidentiary hearing, the petitioner testified that the State offered two pretrial plea agreements: four years probation after sixty days incarceration and five years probation and community service after six months incarceration. He testified that he was willing to accept either offer, but trial counsel told him to allow the trial court to sentence him because the judge would "go light" on him and grant him probation or time served. He stated that trial counsel visited him at the county jail only once, in February 2004.

The petitioner testified that, before his guilty plea hearing, he was released on bond with the condition that he attend drug rehabilitation. He said he did not attend rehabilitation because he was taking care of his ill mother. He stated that it was his understanding that because he did not attend rehabilitation, the State revoked the plea offer requiring sixty days incarceration and replaced it with the offer requiring six months incarceration.

The petitioner stated that trial counsel did not discuss with him the elements of the offense, a list of potential witnesses to call at trial, or the range of punishment for robbery. He testified that counsel did not inform him that his previous misdemeanor convictions could be used to enhance his punishment. He said counsel told him that it would not be a good idea to proceed to trial because he would be found guilty based on the confession he gave to the police.

The petitioner read a prepared statement to the court which stated, "I think I was overly punished for the crime I committed," and asked the court to reduce his sentence to time served plus two years probation. When asked to explain why he told the trial court at the guilty plea hearing that he understood what he was doing, the petitioner said, "Well, I thought I understood. I'd took the, my lawyer, the – I took their word for what would happen to me. . . . I really didn't know. If I'd have known that, they ain't, if I'd been in prison for five years, I'd never have done that." He testified that he believed he was treated unfairly and received too much jail time.

On cross-examination, the petitioner acknowledged that he stole another woman's purse after being released on bond in February 2004. He agreed with counsel for the State that he was upset with the length of his sentence but stated that his attorneys did not do everything possible to help him.

Trial counsel testified that it was the petitioner's decision to forgo his right to a jury trial. Counsel stated that he remembered the sixty-day plea agreement but did not recall the six-month agreement. On cross-examination, trial counsel testified that he met with the petitioner four times, including the date of the guilty plea. He said his normal practice was to explain to his clients their rights and the range of punishment they were facing. He testified that he explained to the petitioner his right to appeal his sentence. He said that, at the guilty plea hearing, he had no question as to the petitioner's competency to enter a plea and believed he pled guilty voluntarily.

Co-counsel testified that she spoke to the petitioner before the sentencing hearing and reviewed the presentence report, including his prior criminal history. She testified that she discussed witnesses to present at the sentencing hearing, and the petitioner told her that he and his mother wished to testify.

Cathy Yarbrough, the petitioner's aunt, testified that if he were released, he could live with her and work for her fiancé.

The trial court dismissed the petition by written order, stating in pertinent part:

> The primary issue in Petitioner's claim for Post Conviction Relief is that "his guilty plea was based on erroneous advice he received from his attorney and that the pleas were not made voluntarily and intelligently."
>
> . . . .
>
> Testimony at the hearing in this cause showed that the state had made an offer to the [petitioner]. The offer was that, on a plea of guilty to the charge of simple robbery, a Class C felony, the [petitioner] would receive either a 3 year sentence after serving 60 days or a 4 year sentence after serving 30 days.
>
> Testimony of Petitioner at the hearing in this cause showed that he rejected the offer because he thought he could go before the judge and get 'time served.' Proof also showed that, while the Petitioner was out on bond for this charge, he committed a similar offense by taking a purse from a lady in the local post office, clearly indicating his lack of remorse for his earlier crime.
>
> Petitioner took his chances with a sentencing hearing, did not like the results of that hearing, and now asks the court to set aside his plea as being "involuntary." Dissatisfaction with the result of a sentencing hearing does not render a plea invalid.
>
> The court finds that there was no evidence shown in the hearing in this cause that would support petitioner's allegations that his plea was involuntary, and any and all claims for Post Conviction Relief set forth in his petition pertaining to this issue are hereby dismissed.

. . . .

Petitioner also alleges that counsel was ineffective because proper arguments were not made in his behalf at the sentencing hearing, and, as counsel for Petitioner orally argued at the hearing in this cause, an appeal should have been taken as to the sentence imposed in this cause.

. . . .

In examining this claim pursuant to the two-prong Strickland test, it is evident that Petitioner's claim must fail. At the sentencing hearing in Petitioner's case, [the trial judge] set forth the reasons for his sentence and incarceration.

Under the sentencing guidelines of T.C.A. § 40-35-103, a court is allowed to consider confinement when "necessary to avoid depreciating the seriousness of the offense" or when confinement "is particularly suited to provide an effective deterrence to others likely to commit similar offenses.["]

It bears mentioning once again that the [petitioner] had not only committed another similar crime while out on bond for this charge but had also given a full confession to his involvement in the original crime. Certainly the courts have an interest in punishing defendants who, while out on bond, commit offenses similar to their original charges. The court can also order incarceration for those who commit such repeat crimes in an effort to deter others from similar actions.

There was no proof presented at the hearing in this cause showing any reason why [the trial court's] sentence was invalid or illegal, and the record is devoid of any reasons, legal or otherwise, that the result of the sentencing hearing would have been different had the issue been taken up on appeal.

This issue is without merit and provides no grounds on which Post Conviction Relief can be granted in this case.

Any and all other grounds raised by the Petitioner either in his original petition or in any amendments thereto are found to be without merit and are hereby dismissed.

## ANALYSIS

The petitioner argues that, because his guilty plea was not knowing and voluntary and trial counsel rendered ineffective assistance, the post-conviction court erred in dismissing the petition. He claims that his guilty plea was a result of trial counsel's failure to thoroughly advise him of the consequences of going to trial and was based on counsel's erroneous advice regarding the length of his sentence. He asserts that trial counsel was ineffective in failing to discuss the relevant

aggravating and mitigating factors, properly investigate his criminal record, or file an appeal from his conviction. The State responds that the post-conviction court properly dismissed the petition. As we will explain, we agree with the State.

## I. Post-Conviction Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

## II. Knowing and Voluntary Plea

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The petitioner argues that trial counsel did not fully advise him of the consequences of going to trial by not stating "with any certainty whether a jury trial could have led to either a reduced sentence or the charge being reduced from robbery to theft." He also claims trial counsel gave him erroneous advice regarding the length of his sentence by "convinc[ing] him that he would get 'time served' and probation." He asserts that these two errors rendered his guilty plea unknowing and involuntary; we disagree.

At the petitioner's guilty plea hearing, he testified that he was not under the influence of drugs or alcohol and that he understood his rights to plead not guilty and to confront witnesses and

his privilege against self-incrimination. He testified that he understood that by pleading guilty he was waiving his rights to a jury trial and to assert his innocence on appeal. The post-conviction court found that "there was no evidence shown in the hearing in this cause that would support petitioner's allegations that his plea was involuntary" and that the petitioner asked the court to declare his plea involuntary because he was dissatisfied with the result of the sentencing hearing. The record supports these determinations.

## III. Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

The petitioner alleges that trial counsel were ineffective in not discussing with him the applicable aggravating and mitigating factors, properly investigating his prior criminal history, or filing an appeal from his conviction. However, at the evidentiary hearing, he did not ask trial counsel whether they discussed the aggravating and mitigating factors. Similarly, he did not establish that he asked trial counsel to file an appeal or that a more extensive investigation into his criminal background would have revealed information relevant to sentencing.[1] The post-conviction court determined that the petitioner had not met the Strickland standard for proving his allegations of ineffective assistance of counsel. Again, the record supports this determination.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

---

[1]The petitioner argues that a more thorough criminal background investigation was required by Rompilla v. Beard, 545 U.S. 374, 124 S. Ct. 2456 (2005). Rompilla held that trial counsel's failure to examine the public record of the defendant's prior conviction prior to a capital sentencing hearing violated his Sixth Amendment right to effective assistance of counsel. 545 U.S. at 393, 124 S. Ct. at 2469. Rompilla is distinct from the petitioner's case for at least two reasons, however. First, Rompilla was a capital case, where the consequences of trial counsel's inactions were much more grave than in this case. We are unaware of any case that has extended its holding to non-capital cases. Second, Rompilla's appellate counsel presented the previously undiscovered mitigating evidence at the post-conviction evidentiary hearing. Id. at 382, 124 S. Ct. at 2463. In contrast, at the evidentiary hearing in this case, the petitioner did not introduce any mitigating evidence which trial counsel failed to discover.

_____

ALAN E. GLENN, JUDGE