# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs January 6, 2009

## JAMES YOUNG v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-23636     Paula L. Skahan, Judge**

---

**No. W2008-00303-CCA-R3-PC  - Filed September 24, 2009**

---

The petitioner, James Young, filed a timely petition for post-conviction relief and two amended petitions for post-conviction relief.  He appeals the denial of post-conviction relief,  contending that he received ineffective assistance of counsel based on trial counsel's failure to:  (1) impeach a State's witness, (2) subpoena an eyewitness to testify, and (3) request a jury instruction on self-defense.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

David L. Christensen, Memphis, Tennessee, for the petitioner-appellant, James Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was convicted of second degree murder by a Shelby County Criminal Court jury and received a sentence of twenty-four years as a Range I, standard offender.  On direct appeal, the petitioner argued that the evidence was insufficient to support his conviction, and this court affirmed the trial court's judgment.  See State v. James Young, No. 02C01-9805-CR-00144, 1999 WL 228845, at *1-2 (Tenn. Crim. App., at Jackson, Apr. 21, 1999), perm. to appeal denied (Tenn. Oct. 11, 1999).  The petitioner filed a timely pro se petition for post-conviction relief.  The trial court appointed counsel, and two amended petitions were filed.  Following the evidentiary hearing, the trial court issued an order denying post-conviction relief on January 4, 2008.  The petitioner filed a timely notice of appeal.

## FACTUAL BACKGROUND

**Facts.**  We find this court's summary of the evidence presented on direct appeal helpful to the disposition of this appeal:

The defendant was tried for the murder of Edwin McFarland. The evidence showed that on November 4, 1995, the defendant was driving and John Cunningham was riding with him when Cunningham asked the defendant to stop the car. Cunningham had seen the victim's car parked across the street from where they were. Cunningham wanted to talk to the victim because he had heard that the victim was trying to sell a VCR and some jewelry which Cunningham thought might have been taken in a burglary of his home. The defendant stopped in front of the house in which his eleven-year-old son, James Thomas, lived with the son's grandmother.

According to the defendant, at Cunningham's request, the defendant sent his son across the street to contact the victim, and the victim came outside. Cunningham and the victim argued for a few minutes and then began to fight. The victim hit Cunningham several times, and Cunningham pulled out a gun. The facts surrounding the rest of the fight were in dispute at trial.

Lora Jean Watkins, the victim's fiancé, testified that she was on the porch of the victim's mother's house when she saw the victim and Cunningham fighting. She said that the defendant jumped out of a car and joined the fight. She said that the defendant told Cunningham not to fight with the victim but to shoot him. She testified that she saw the defendant take the gun from Cunningham and hit the victim in the head with it. She stated that Cunningham told the defendant not to shoot, but the defendant then shot the victim twice from three to four feet away.

The victim's brother, Efrem McFarland, testified that he went outside his mother's house when he heard that the victim was in a fight. He said he saw the defendant take the gun from Cunningham and point it at the victim. He testified that the victim reached for the defendant, and the defendant hit him on the head with the gun. He stated that the victim backed up, and the defendant shot toward the victim's legs. He said that three more shots were fired and that the victim came toward him, fell, and died in his arms. He stated that the victim and the defendant were about ten feet apart when the shots were fired. On cross-examination, McFarland admitted telling the police that the defendant and the victim were fighting when the gun went off and that the defendant shot the victim at least two or three more times.

Dr. Wendy Gunther testified that she performed an autopsy on the victim's body. She said that the victim suffered a gunshot wound to the inside of the upper left thigh and a wound to the neck. She stated that the bullet passed through muscle, made a hole in the jugular vein, and injured a branch of the carotid artery, causing the victim to bleed to death. Due to the lack of gunshot residue on the victim's neck or clothing, Dr. Gunther believed that the gun was

-2-

more than two and one-half to three feet away from the victim when it was fired. She also noted that the victim had a large abrasion on the right side of his forehead caused by blunt trauma.

The defendant testified that during the fight, Cunningham pulled out the gun to make the victim retreat, but the victim kept coming toward Cunningham. He said that when the victim reached for the gun, he ran over to help Cunningham. He said that he got the gun from Cunningham and told the victim to leave him and Cunningham alone, but the victim reached for the gun. The defendant testified that they fought over the gun and that they both were holding the gun when it discharged twice. He said the gun was pointed down. He stated that they continued to struggle over the gun, and it fired a third time. He said that the third bullet struck the victim in the neck. The defendant denied intending to shoot or kill the victim and stated that the gun had discharged accidentally.

The defendant testified that after the shooting, he and Cunningham left, and the defendant hid the gun. He said that he stayed with a cousin for several months to avoid the police.

The record reflects that at the time of the defendant's trial, John Cunningham had entered a guilty plea to facilitation of the second degree murder of the victim and had received an eight-year sentence to be served on probation. Cunningham's testimony was similar to the defendant's testimony. He said that when the defendant and the victim were wrestling over the gun, he retreated to the sidewalk. He said that when he reached the sidewalk, he heard the first shot but did not see anyone get hit. He said that when he turned around, he saw the gun pointed at the victim's neck with both men still holding the weapon. Cunningham testified that the gun discharged and that the victim took a couple of steps backward and fell. He said he heard two or three shots fired before the victim fell.

The defendant's son, James Thomas, testified that the defendant and the victim were wrestling over the gun when the shots were fired. James Thomas' cousin, Cleveland Thomas, testified that he had been playing with Thomas before the events occurred. He said that he saw the gun discharge when the defendant and the victim were scuffling, although he acknowledged that his statement to the police on the day of the shooting reflected that he said that the defendant first shot the victim in the leg and then in the head. The defendant was convicted of second degree murder upon the foregoing evidence.

James Young, 1999 WL 228845, at *1-2.

**Post-Conviction Hearing.** The record shows that petitioner's trial counsel died prior to

the post-conviction hearing on September 15, 2006, and the only witness who testified regarding the allegation of ineffective assistance of counsel was the petitioner. At the time of the post-conviction hearing, the petitioner suffered from memory loss and other health problems related to a brain tumor.

The petitioner testified that trial counsel met with him only once and did not discuss a defense theory with him. He also stated that he rejected an offer by the State for a sentence of twelve years and informed his attorney that he wanted to proceed to trial. The petitioner stated that trial counsel never advised him regarding his testimony prior to trial.

The petitioner said he notified trial counsel that he wanted the eyewitness to the offense, Tony Kelly, to testify. He said that Kelly had testified at the preliminary hearing but was never called by trial counsel to testify at trial. Trial counsel never told him why he did not have Kelly testify at trial.

The petitioner additionally stated that trial counsel failed to impeach Efrem McFarland, a witness for the State, regarding his prior convictions, his plea bargain agreement in exchange for testifying for the State, and his bias because he was the victim's brother. He said that trial counsel was aware that McFarland was in custody at the time he testified against him, however, his attorney never asked McFarland why he was in custody.

Regarding the issue of the self-defense jury instruction, the petitioner stated that he had told trial counsel that the victim had started fighting his co-defendant and had tried to get his co-defendant's gun when the petitioner got into the fight and grabbed the gun himself. The petitioner testified:

> [The victim] tried to get [the gun] but I got in it. And [the victim] turned around and grabb[ed] me and me and him went to wrestling and then [the gun] went off. Then [the victim did not] let it go so I [did not] know [the gun] shot him. And then we kept on and [the gun] went off again then. That [is] when [the victim] turned around and walked off and fell.

The petitioner stated that trial counsel failed to request a jury instruction regarding self-defense. He said that during trial, the trial court questioned trial counsel about the inclusion of a self-defense jury instruction, and trial counsel refused to request the instruction. The petitioner said that he and trial counsel never discussed the possibility of a self-defense jury instruction and that trial counsel never explained why he refused to request the instruction. However, the petitioner acknowledged that he failed to specifically ask trial counsel why he refused to submit the self-defense jury instruction.

During cross-examination, the petitioner stated that he gave trial counsel a telephone number and address for Tony Kelly. However, when asked to state Kelly's phone number and address, the petitioner said that he could not remember that information. He also acknowledged

that although the victim "tried to attack [him]," the victim never got the gun from his co-defendant before he grabbed the gun and shot the victim. The petitioner admitted that his criminal background included ten prior felony convictions including theft, grand larceny, burglary, receiving stolen property, attempt to commit a felony, and attempt to commit arson.

Although the transcript from the September 15, 2006 post-conviction hearing indicated that the remainder of the hearing would take place on November 17, 2006, and indicated that the defense would have Tony Kelly testify at that time, no transcript showing a continuation of the hearing is included in the record. Furthermore, the trial court's order denying post-conviction relief states that the hearing regarding post-conviction relief took place on September 15, 2006 and does not mention any additional hearing dates. The order also states that the petitioner failed to provide testimony from any witnesses, including Tony Kelly, at the post-conviction hearing.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation

encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

**Ineffective Assistance of Counsel.** The petitioner claims ineffective assistance of counsel based on trial counsel's failure to: (1) impeach the State's witness, Efrem McFarland; (2) subpoena the eyewitness, Tony Kelly, to testify; and (3) request a jury instruction on self-defense and to present a defense. Because petitioner's arguments regarding trial counsel's failure to present a defense focus only on his failure to request a self-defense jury instruction, our analysis will also be limited to that issue. The State contends that the petitioner has failed to show by clear and convincing evidence that the actions of trial counsel were deficient and prejudicial. We agree with the State.

First, the petition alleges ineffective assistance of counsel because of trial counsel's failure to impeach the State's witness, Efrem McFarland, based on his prior convictions, his plea bargain agreement in exchange for his testimony, and his bias. After reviewing the record, we find no proof that the actions of trial counsel fell below the required standard. The post-conviction court ruled that the petitioner did not provide clear and convincing evidence of that he received ineffective assistance of counsel on this issue, and the record supports the ruling of the post-conviction court. The petitioner has not shown trial counsel's actions to be deficient or prejudicial regarding his failure to impeach McFarland.

Second, the petitioner claims trial counsel failed to subpoena Tony Kelly, an eyewitness to the crime. The State argues that the petitioner has not proved that he received ineffective

assistance of counsel since the petitioner failed to have Kelly testify at the post-conviction hearing. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The decision of the post-conviction court is supported by the record, and we will not speculate about the impact or content of a witness's testimony. The petitioner has not shown trial counsel's actions to be deficient or prejudicial regarding his failure to subpoena Kelly.

Third, the petitioner asserts that trial counsel was ineffective because he failed to request jury instructions regarding self-defense. During the post-conviction hearing, the petitioner testified that the victim never possessed the gun and admitted that he was not initially involved in the fight but joined the altercation to assist his co-defendant. In addition, the petitioner acknowledged during the hearing that he did not specifically ask trial counsel why he refused to request a self-defense jury instruction. Most importantly, as noted by the State, this court on direct appeal concluded that the evidence showed that petitioner did not kill the victim in self-defense:

> We believe that the evidence, taken in the best light for the state, supports a second degree murder conviction. Evidence supports the jury concluding that the defendant urged Cunningham to shoot the victim, and when Cunningham did not, the defendant took the gun and shot the victim himself. Before he did so, the defendant was not involved in the altercation. And when he did so, he and the unarmed victim were standing up to ten feet apart.

James Young, 1999 WL 228845, at *3.

In addition, the record includes almost no information regarding trial counsel's decision regarding the self-defense jury instruction. The only reference to a self-defense instruction occurred just prior to closing arguments:

| DEFENSE COUNSEL: | I guess I could renew my motion for judgment of acquittal on the same grounds as previously elicited and wait for Your Honor's ruling. |
|---|---|
| THE COURT: | All right. Well, I think my ruling will be the same. Although we did bring up self-defense in some kind of fashion, I don't – |
| DEFENSE COUNSEL: | I didn't bring it up. |
| THE COURT: | Well, I understand. But – |
| THE STATE: | The Court's not of a mind that that's in the proof in any way, shape, or form, is it |

THE COURT:    Well, I don't know.  We'll discuss that. . . .

However, no further discussion of this instruction appears in the record.  We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  State v.  Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2052). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89,  104 S. Ct. at 2065.  The petitioner has not shown trial counsel's actions to be deficient or prejudicial regarding his failure to submit a self-defense jury instruction.  We conclude that the post-conviction court properly found that the petitioner did not receive ineffective assistance of counsel.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.


_____
CAMILLE R. McMULLEN, JUDGE