IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 1, 2009 Session

## PAUL WILSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-01773     W. Mark Ward, Judge**

_____

**No. W2009-00173-CCA-R3-PC  - Filed June 14, 2010**

_____

The petitioner, Paul Wilson, appeals the denial of his petition for post-conviction relief and contends that he received ineffective assistance of counsel. He was convicted of aggravated robbery and sentenced to thirty years as a career offender. After careful review, we affirm the judgment from the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Paul Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Summer Morgan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts underlying this case demonstrated that the petitioner entered a convenience store on the evening of June 12, 2003, and requested two quarters in exchange for fifty pennies. The store clerk, the victim, complied, and the petitioner left the store. Approximately fifteen minutes later, the defendant returned and requested change for one of the quarters. The victim was getting the change when the petitioner pulled out an object that appeared to be a gun, wrapped in cloth. The petitioner told the victim, "Don't make me shoot you" and "Give me all the money." The victim gave him the money in the drawer, but the petitioner asked about money under the drawer. When the victim told him that there was no money under the drawer, the petitioner reached over the counter and checked for himself.

He then ordered the victim to the ground and left the store. The victim called 9-1-1 and described the petitioner. The petitioner was stopped later that evening when police spotted a car and driver matching the description given by the victim. One of the officers who stopped the petitioner saw him throw something out of his window, but the object was never recovered. The officers arrested the defendant and returned him to the scene of the robbery. The victim positively identified him as the robber.

During the hearing on the petition for post-conviction relief, the petitioner's trial counsel testified that she did not make a written motion to have aggravated assault included as a lesser included offense of aggravated robbery because she did not think it was a lesser included offense at the time. She acknowledged that she did not make a strategic decision to exclude aggravated assault.

Trial counsel also testified that they tried to enter a guilty plea prior to trial but it was ultimately rejected by the trial court. She recalled that the State and the petitioner discussed the plea for two hours. The petitioner called her a "bitch" and caused her to be worried for her safety because of his anger. She testified that she did her best to secure a good deal for the petitioner, with an offer of fifteen years as a Range II offender. The petitioner finally agreed to the offer but was "playing games" on the witness stand and, as a result, the trial judge would not accept the plea. She did not object because she believed it was the trial judge's discretion to accept or reject the plea. She did not include the issue in the petitioner's motion for new trial because she did not think it was an appropriate issue in that motion. Counsel said that she wanted the petitioner to accept the plea agreement because it was in his best interest, considering the strength of the State's case against him.

Trial counsel testified that she did not review the petitioner's prior convictions because they had already been served and were all of a classification to raise his sentencing range. The petitioner did not raise any objections to her about the validity of his prior convictions. She acknowledged that she only met with the petitioner in court because she was concerned for her safety with him in the jail. She also testified that the petitioner was not communicative with her and had announced in court that he did not want to speak with her again.

Analysis

On appeal, the petitioner argues that trial counsel was ineffective in three areas. He contends that counsel failed to attack his prior convictions that were used to enhance his sentencing range to that of a career offender. The petitioner also argues that counsel was ineffective for failing to challenge the trial court's rejection of his guilty plea offer and for failing to request a jury instruction for the lesser included offense of aggravated assault.

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. *See* U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applicable in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all convicted petitioners' claims of ineffective assistance of counsel. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." *Id.* at 685, 104 S. Ct. at 2063. The *Strickland* standard is a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S. Ct. at 2064. The *Strickland* court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

*Id.* at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001)(citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the *Strickland* Court stated that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; *see also Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994)(concluding that the

petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, are subject to *de novo* review by the appellate court. *See Wiley*, 183 S.W.3d 317, 325 (Tenn. 2006); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not, alone, support the claim of ineffective assistance of counsel. *See Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. *See Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in *Burns*, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

First, the petitioner argues that trial counsel was ineffective for failing to properly investigate the validity of his prior convictions before he was sentenced. Specifically, he contends that counsel was deficient for not investigating his prior felony convictions and in failing to object to their use to enhance his sentence. The post-conviction court found that the petitioner had seven prior felony convictions and that he had attacked his prior convictions in two prior habeas corpus petitions. The post-conviction court specifically held that the petitioner failed to demonstrate that counsel was deficient or that he was prejudiced with regard to the sentencing proceedings. The record reflects that certified copies of the judgment and the presentence report were introduced as exhibits during the sentencing hearing. The post-conviction court held that the judgments did not reveal any illegality and that the sentences had already been served by the petitioner. The post-conviction court cited *State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987), stating that "courts have consistently held that a defendant may not attack a facially valid prior conviction in a subsequent proceeding in which the prior conviction is used to enhance punishment." The petitioner's sentences had already expired and were no longer subject to collateral attack because the time for filing a post-conviction petition for those convictions had already passed. The petitioner has already received habeas corpus review of those prior convictions, and the habeas court found that the judgments were not void.

During the post-conviction hearing, counsel testified that the petitioner never told her that there was anything wrong with his prior convictions and did not allege that the judgments were void. She also testified that the judgments did not appear to be void. The

-4-

petitioner has not met his burden of demonstrating either that counsel was deficient or that he was prejudiced by her representation.

Next, the petitioner argues that counsel was ineffective for failing to challenge the trial court's rejection of his guilty plea and for failing to raise the issue in a motion for new trial. The post-conviction court noted that the petitioner raised this issue on direct appeal, but this court held that the issue was waived for failure to include it in his motion for new trial. This court also held that the issue did not rise to the level of plain error.

This court's opinion on direct appeal held that a defendant has the inherent and constitutional right to plead guilty but that there is no absolute right to have his guilty plea accepted by the trial court. *State v. Paul Wilson*, 2005 WL 3533339 at *2. The trial court, in its discretion, determines whether to accept or reject a guilty plea. The petitioner has failed to demonstrate that counsel was deficient in this issue.

Next, the petitioner argues that counsel was ineffective for failing to secure a jury instruction on the lesser included offense of aggravated assault. The jury was instructed on the lesser included offenses of robbery and misdemeanor theft, and the post-conviction court found that counsel should have requested an instruction for inclusion of an instruction for aggravated assault because it was a lesser included offense. However, the post-conviction court determined that the petitioner failed to establish that he was prejudiced because the failure to instruct the jury on aggravated assault did not affect the outcome of the trial.

The record reflects that counsel failed to request a jury instruction for aggravated assault because she did not think it was a lesser included offense of aggravated robbery at the time of trial. This court has previously held that aggravated assault is a lesser included offense of aggravated robbery in *State v. James Eric Alder*, No. M1999-02544-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 843, at *7 (Tenn. Crim. App. at Nashville Oct. 27, 2000). However, we conclude that the petitioner has failed to establish that he was prejudiced by the lack of an instruction. The evidence at trial established that the petitioner was guilty of aggravated robbery. He held a store clerk at gunpoint and told him, "Don't make me shoot you" and "Give me all the money." The victim gave the petitioner the money in the cash register. In light of the evidence presented at trial, it is unlikely that the outcome would have been different with an instruction on the lesser included offense of aggravated assault. Even though it was given instructions on other lesser included offenses, the jury convicted the petitioner of the greatest offense charged. The petitioner is not entitled to relief on this issue. We conclude that the record supports the post-conviction court's dismissal of the petition for post-conviction relief.

Conclusion

Based on the foregoing and the record as a whole, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.


_____
JOHN EVERETT WILLIAMS, JUDGE