IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2024

**RADAMES ANTONIO RIVERA v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County
No. 41400336, 63CC1-2014-CR-338      Robert Bateman, Judge**

———————————————————

**No. M2023-01276-CCA-R3-PC**

———————————————————

The Petitioner, Radames Antonio Rivera, appeals the denial of his petition for post-conviction relief from his second degree murder conviction, arguing that his trial counsel provided ineffective assistance by failing to strike two jurors who had prior connections with the parties and by failing to effectively cross-examine a principal State witness.  Based on our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

George Thomas, Pro Hac Vice, Winter Park, Florida (at hearing), and Robert L. Sirianni, Jr., Winter Park, Florida (on appeal), for the appellant, Radames Antonio Rivera.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Robert J. Nash, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Petitioner's March 16, 2014, stabbing to death of Darrell Ray Willis in the parking lot of the Wild Woody's Saloon in Clarksville.  *See State v. Rivera*, No. M2016-00938-CCA-R3-CD, 2017 WL 401377, at *1 (Tenn. Crim. App. Jan. 30, 2017), *perm. app. denied* (Tenn. Apr. 12, 2017).  The Petitioner was indicted for one count of first degree premeditated murder, one count of attempted tampering with

evidence, and one count of unlawful possession of a weapon. *Id.* The jury convicted him of the lesser-included offense of second degree murder in count one, the trial court granted his motion for judgment of acquittal in count two, and the State dismissed count three. *Id.* at *3. The Petitioner's conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. *Id.* at *1.

Our direct appeal opinion provides the following summary of the events that transpired:

> Shortly after 2:00 a.m. on March 16, 2014, the [Petitioner] stabbed Darrell Ray Willis in the parking lot of Wild Woody's Saloon ("the bar") in Clarksville, Tennessee. At trial, the State presented several witnesses who were present during the incident. Their accounts were largely consistent regarding the events surrounding the stabbing. Those witnesses present during the offense and who testified for the State at trial were: Ashlee Hughes, Michael Stewart, Candice Corbin, Derrick Douglas, James Wilbur, Shane Cortez, and Adam Zacharzuk.

> The [Petitioner] and victim were members of two separate groups who had participated in a "pub crawl" in celebration of St. Patrick's Day. A "pub crawl" is an event where individuals are transported, usually by foot or public transportation, to various bars and clubs in a single night for the purpose of consuming alcohol. The two groups visited several different bars the night of March 15, 2016, before ultimately ending up at the bar. Inside the bar, an altercation arose between members of the [Petitioner]'s group and members of the victim's group over a perceived slight. Bouncers, employed by the bar, removed the individuals responsible for the altercation to the parking lot outside. The scene outside the bar was chaotic, with multiple fights going on at various locations throughout the parking lot.

> To the left of the entrance to the bar, a fight broke out between female members of the two groups. To the right of the entrance to the bar, Marcus Harley and the victim were fighting and struggling on the ground. During the struggle, the victim was "jumped" and "beat up" by approximately five individuals. At this point, the [Petitioner] was standing alone ten to fifteen yards away observing the altercation. The [Petitioner] pulled a knife from his pocket and opened it. An unidentified female grabbed the [Petitioner]'s arm, attempting to stop him. The [Petitioner] shrugged her off and walked quickly across the parking lot to where the victim was crouched defending himself. The [Petitioner] plunged his arm into the pile of people, stabbing the victim in the chest. The [Petitioner] stated, "This is what y'all

motherf\*\*kers wanted," and "yeah motherf\*\*ker." The victim fell backwards onto the pavement, and the [Petitioner] backed away in between the rows of parked cars. The [Petitioner] bent down and dropped the knife near a white sedan.

*Id.*

The Petitioner, testifying in his own defense, said that when he went outside, he saw three or four individuals assaulting Mr. Henley. *Id.* at \*3. The Petitioner admitted "that he was in no danger, standing alone, and no one was confronting him." *Id.* As the Petitioner began walking toward the group that was surrounding the victim, a man named Shane Cortez "approached [the Petitioner] with clenched fists." *Id.* The Petitioner testified that he "pulled a knife from his pocket, intending to intimidate Mr. Cortez." *Id.* The Petitioner stated that he was holding his knife down by his side until Mr. Cortez swung at him and missed. *Id.* At that point, he raised his knife to chest level and told Mr. Cortez to back up. *Id.* The Petitioner said that he then saw in his peripheral vision that someone was rapidly approaching, turned, and saw the victim "rushing toward him." *Id.* According to the Petitioner, his "knife just went in" as he and the victim met. *Id.* The Petitioner testified that he was in shock, and that he backed away and tossed his knife under a nearby car. *Id.* He said he never intended to kill the victim. *Id.*

On April 12, 2018, the Petitioner filed a pro se petition for post-conviction relief in which he raised several claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed amended petitions in which he alleged that his trial counsel was ineffective for, among other things, failing to strike two jurors who were biased against the Petitioner and for not properly cross-examining State's witness Adam Zacharzuk. Although the Petitioner alleged several instances of ineffective assistance of trial and appellate counsel in his pro se and amended petitions, he confines himself on appeal to the above two issues. Accordingly, we will summarize only the portion of the evidentiary hearing that is pertinent to the issues raised on appeal.

Five witnesses testified at the May 2, 2023 evidentiary hearing: the Petitioner; the Petitioner's trial counsel; the Petitioner's appellate counsel; Mark Olson, a lawyer who represented the bar owner in a civil lawsuit filed in connection with the stabbing; and the district attorney who prosecuted the case. However, only trial counsel and the Petitioner provided testimony relevant to the issues raised on appeal.

Trial counsel, called as a witness by the State, testified that he graduated from law school in 2007 and worked on his own for a while before spending approximately three years with the Davidson County Public Defender's Office. In 2011, he relocated to Clarksville, where his practice consisted of 95% criminal defense work. He said he had

tried six or seven murder cases prior to the Petitioner's and "numerous murder cases" in the eight years since the Petitioner's trial.

Trial counsel identified the CD of two surveillance videos from inside the bar that were admitted and published to the jury during the trial. He said the videos helped to corroborate the Petitioner's testimony that he was "bull-rushed" outside the bar because both videos "showed [the Petitioner] and the group he was with being attacked by the victim . . . and his people that he was with." He said the first video showed the Petitioner "sitting at the bar with his friends, not bothering anybody," when someone threw a punch at him. He stated that the bar's bouncers separated the two groups, and the second video showed that the Petitioner and his friends "calmly left [the bar,]" with the victim and his group following them outside "some minutes" later. Neither video showed the fight outside the bar.

Trial counsel had no independent recollection of Ms. Reppert, a juror that the Petitioner alleged was not impartial because she worked with the victim's fiancée, Ashlee Hughes. Trial counsel testified that his typical practice was to "have some input with [his] client" with respect to which jurors they were going to keep and which ones they were going to strike. However, it was not an "exact science" as there was no way to "tell which jurors are going to be optimal to your position." It was also based on how many strikes they had already used, and the "unique ability" they had in Montgomery County to know the order in which venire members would be called, so that they could "make the decision on whether to strike based on all of those factors[.]" Although he had no specific recollection of Ms. Reppert, he testified that he would have used a peremptory challenge to strike her if he had been uncomfortable with her as a juror.

Trial counsel also had no recollection of the second juror that the Petitioner alleged should have been struck because the juror had attended high school with trial counsel. Trial counsel testified that he attended high school with over 1200 people, did not know who that juror was, and had no memory of having had any sort of relationship, either positive or negative, with him. He did not recall having told the Petitioner that the juror's brother was a convicted felon but said that if he did, he did not "see how that would not be favorable to [the Petitioner]'s position."

Trial counsel recalled that Mr. Zacharuk testified for the State for the purpose of admitting the bar's surveillance videos. He had no memory of Mr. Zacharuk's telling him of a "recalled memory that [the Petitioner] was bull-rushed outside the bar just moments before . . . the stabbing[.]" Trial counsel testified that, had Mr. Zacharuk provided that information, he would have brought it up during his cross-examination.

- 4 -

On cross-examination, trial counsel testified that they may have had follow-up questions of Ms. Reppert to gauge the nature of her relationship with Ms. Hughes and noted that their having worked together did not mean that they were "integrally connected." He repeated that he did not remember the juror with whom he had attended high school. He acknowledged the fact that he did not recall that high school classmate, while the juror recalled him, meant it was possible that the juror might remember him "for some maybe negative reasons[.]"

The Petitioner testified that he was concerned when Ms. Reppert informed the trial court that she and the victim's fiancée were "work associates or coworkers" because he thought "she might have a biased opinion against [him]." He said he asked trial counsel to strike her, but he did not. He stated that he was also concerned about the impartiality of a second juror, whom he referred to as Mr. Jones. He said that trial counsel told him that he had attended high school with the juror, knew that the juror's brother was a convicted felon, and believed that the juror would be a good one to keep. The Petitioner testified that trial counsel was unable to recall whether he and the juror "had any issues in school or what their relationship was."

The Petitioner testified that he communicated via Facebook Messenger with the bar owner, Sadie Sprouts Zacharuk. During one of their conversations, Mrs. Zacharuk told him that her husband had informed trial counsel of his recollection that the Petitioner was "bull-rushed that night of the incident[,]" and that her husband "thought it was funny that" trial counsel did not bring it up during his cross-examination. On cross-examination, the Petitioner testified that his Facebook Messenger conversations with Mrs. Zacharuk occurred in 2018, approximately three years after the trial.

On July 21, 2023, the post-conviction court entered a detailed written order denying the petition. This appeal followed.

## ANALYSIS

The Petitioner contends on appeal that trial counsel was deficient for failing to cross-examine Mr. Zacharuk about his memory of having seen the Petitioner being "bull-rushed" and for not striking the two jurors who had prior relationships with the parties. He argues that testimony from Mr. Zacharuk about the Petitioner's having been "bull-rushed" "would have possibly changed the outcome of the case[,]" and that he was deprived of his right to an impartial jury by trial counsel's failure to recognize and address the subconscious bias potentially created by the jurors' connections with the parties. The State argues that the post-conviction court properly denied the petition. We agree with the State.

- 5 -

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *Id.* (first citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); and then citing *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.* at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (first citing *Strickland*, 466 U.S. at 688; and then citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the

conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In denying the petition, the post-conviction court accredited the testimony of trial counsel over that of the Petitioner, finding that "Mr. Zacharuk never made any statements that [the] Petitioner was 'bull-rushed.'" The post-conviction court noted that Mr. Zacharuk was not called as a witness at the evidentiary hearing, and that the trial transcript revealed that trial counsel "was well prepared to cross-examine" the witness at trial, "as evidenced by the fact that trial counsel impeached the witness with prior statements made to the police." The post-conviction court, therefore, concluded that the Petitioner failed to carry his burden of demonstrating ineffective assistance with respect to this claim.

As for the Petitioner's allegation that trial counsel was ineffective for not exercising peremptory challenges against the two jurors who had connections with the parties, the post-conviction court found that the Petitioner failed to present "any evidence that suggest[ed] that either juror was biased." The post-conviction court reviewed the relevant portion of voir dire relating to those prospective jurors. Ms. Reppert stated that she might be familiar with Ms. Hughes through work but did not know her on a personal level, and trial counsel indicated that he was familiar with a juror named Mr. Seymour from high school but only by his nickname. The post-conviction court concluded that, without any proof of bias, the Petitioner failed to meet his burden of demonstrating that he was prejudiced by trial counsel's failure to strike those jurors.

The record fully supports the findings and conclusions of the post-conviction court. As an initial matter, we note that Mr. Seymour, the only prospective juror that trial counsel indicated he knew, was excused after the exercise of peremptory challenges and never served on the jury. The record reflects that Ms. Reppert served on the jury, but there was nothing in her responses during voir dire to show that she was biased, and the Petitioner

presented no other evidence to show that she was biased. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to strike a juror, the Petitioner must show actual bias on the part of the juror. *Matthews v. State*, No. W2018-00966-CCA-R3-PC, 2019 WL 1110101, at *7 (Tenn. Crim. App. Mar. 11, 2019) (citing *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009)).

As for the Petitioner's allegation that trial counsel was ineffective in his cross-examination of Mr. Zacharuk, we note that trial counsel, an experienced criminal defense attorney whose testimony was specifically accredited by the post-conviction court, testified that he had no memory of Mr. Zacharuk's having told him of witnessing the Petitioner being "bull-rushed" prior to the stabbing, and that he would have cross-examined him on that topic if he had had that information. The only claim that Mr. Zacharuk had this information was a hearsay statement allegedly made by Mrs. Zacharuk three years after the trial. The Petitioner never called Mr. Zacharuk to testify that he made the "bull-rush" statement. Moreover, as the post-conviction court noted, the relevant portion of the trial transcript, which we have reviewed, reveals that trial counsel cross-examined Mr. Zacharuk on his prior statements to police and on the circumstances surrounding the stabbing.

We, therefore, conclude that the Petitioner failed to meet his burden of demonstrating ineffective assistance of trial counsel and affirm the denial of the petition.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court.

_____
JOHN W. CAMPBELL, SR., JUDGE

- 8 -